**Daniel J. SCHOOLCRAFT, Theodore Thomas, and Joseph L. Drumbeater, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Louis W. SULLIVAN, M.D., Secretary of the Department of Health and Human Services, et al., Defendants.**

**Civ. No. 4–90–53.**

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 3, 1991.

M. Francesca Chervenak, Kathleen Marg Davis, John S. Whitelaw, Laurie Nina Davison, Minneapolis, Minn., for plaintiffs.

Jerome Arnold, U.S. Atty., Robert Michael Small, Asst. U.S. Atty., Minneapolis, Minn., Donna Morros Weinstein, Chief Counsel, Region V, Donald T. McDougall and Michael Messer, Asst. Regional Counsel, Chicago, Ill., for defendant.

Hubert H. Humphrey, III, Atty. Gen. and Donald E. Notvik, Sp. Asst., St. Paul, Minn., for state defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiffs' motion for class certification and defendants' motion to dismiss for either lack of subject matter jurisdiction or failure to state a claim upon which relief may be

granted, or in the alternative, for summary judgment. Based on the file, record and proceedings herein, the court grants defendants' motion for summary judgment.

## BACKGROUND

The plaintiffs bring this action to challenge the administrative process for evaluating social security disability claims in which the claimants allege alcoholism or other substance abuse as the basis for their disability.

Titles II and XVI of the Social Security Act provide monthly disability benefits to persons who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[1] 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The definition of disability is stringent because the Act does not permit benefits for partial disabilities. *Stephens v. Heckler,* 766 F.2d 284, 285 (7th Cir.1985). The Act further imposes a durational requirement: an impairment must be disabling for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Timmerman v. Weinberger,* 510 F.2d 439, 443 (8th Cir.1975). Thus, medical conditions which are episodic and do not last for a continuous 12–month period cannot constitute a disability within the meaning of the Social Security Act, even if they are disabling for recurrent periods of less than twelve months. *See, e.g., Maher v. Secretary of Health & Human Servs.,* 898 F.2d 1106, 1109 (6th Cir.1989) (citing *Schaffer v. Califano,* 433 F.Supp. 1218, 1224 (D.Md. 1977)). In order to obtain benefits under Titles II or XVI, a person must file a claim with the Secretary alleging, among other things, the condition or impairment which disables, and the date on which the disability began. Once a claimant is deemed "disabled", benefits will continue as long as other nondisability related criteria are met

unless the claimant's medical condition has improved to the point where substantial gainful activity can be performed.[2]

The Secretary has established a four-tier administrative appeals process to resolve disputed disability claims. The "initial determination" of a claim is made by a state agency pursuant to regulations, guidelines, and performance standards established by the Secretary (Initial Stage). 42 U.S.C. §§ 421(a), 1383b(a). If the initial determination is adverse, the individual may request within 60 days a de novo reconsideration by the same state agency. (Reconsideration Stage). Failure to seek further review renders the initial determination binding. After an adverse reconsideration decision, the claimant becomes "entitled to a hearing thereon by the Secretary". 42 U.S.C. §§ 421(d), 1383(c)(1). The claimant may request a de novo hearing before an administrative law judge (ALJ) within 60 days after the adverse reconsideration determination. 42 U.S.C. §§ 405(b)(1), 1383(c)(1). Failure to request an ALJ hearing renders the reconsideration determination binding. At the fourth stage, the claimant may appeal an adverse ALJ decision, within 60 days, to the Appeals Council, the highest appellate tribunal within the Social Security Administration. If the claimant fails to make a timely request for such review, the ALJ decision becomes binding. For purposes of judicial review, a determination of an individual's claim for benefits becomes a "final decision" only after the Appeals Council has either denied review or granted review and issued its own decision. This final decision then is subject to judicial review pursuant to 42 U.S.C. § 405(g). *See* 42 U.S.C. §§ 421(d), 1383(c)(3).

In Minnesota, a state agency called the Disability Determination Services of the Minnesota Department of Jobs and Train-

---

1. The regulations setting the disability standards under Titles II and XVI are the same in all relevant respects. *Sullivan v. Zebley,* —— U.S. ——, 110 S.Ct. 885, 888 n. 3, 107 L.Ed.2d 967 (1990).

2. There are certain circumstances in which the Secretary may find that a disability has ended

even though medical improvement has not occurred, provided the claimant also can perform substantial gainful activity under the circumstances. For example, benefits may be terminated without medical improvement if the recipient has undergone vocational therapy. 42 U.S.C. § 423(f)(2).

ing (DDS) has been designated by the Secretary to handle the first two stages of the administrative process. Thus, the DDS determines whether the claimant is disabled at the Initial Stage. If unsuccessful at the Initial Stage, the claimant may ask the DDS for a reconsideration. If unsuccessful at the Reconsideration Stage, the claimant may request a hearing before an administrative law judge who is employed by the Social Security Administration.

Throughout the four-tier administrative appeals process, a five-step analysis is used to determine whether a claimant is "disabled" for purposes of the Act. In the first step, the Secretary determines if the claimant is working or engaged in "substantial gainful activity" at the time of the determination. If yes, the claim for benefits is automatically denied. 20 C.F.R. §§ 404.1520(a) & (b), 416.920(a) & (b) (1989). If the claimant is not engaged in substantial gainful activity, the Secretary moves to the second step of the process and determines whether the claimant has a physical or mental impairment which is "severe". An impairment is considered severe if it significantly limits a claimant's physical or mental ability to perform basic work activity. If an impairment is not severe, the claimant is not considered to be disabled and the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c) (1989). If the claimant is determined to have a severe impairment, the Secretary moves to the third step to determine whether the claimant's impairment meets or equals the severity of an appropriate listed impairment. A listed impairment is one which is included, with its symptoms, in the regulations governing the Title II and Title XVI programs. If the Secretary determines that the claimant has an impairment which meets or equals the characteristics of a listed impairment the claimant is conclusively presumed disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d) (1989). If the claimant's impairment does not meet or equal a listing, the Secretary goes to the fourth step to determine whether the claimant is able to do work formerly done. If

the claimant is able to do the former work the claimant is not considered disabled and the claim is denied. 20 C.F.R. §§ 404.1520(e), 416.920(e) (1989). If the claimant is not able to perform the former work, the Secretary moves on to the fifth step to determine whether the claimant can do any other work available in the national economy, given the age, education, and work experience of the person. If the claimant cannot do any other work, disability is found. 20 C.F.R. §§ 404.1520(f), 416.920(f) (1989).

At the third step of the evaluation process, if a claimant alleges disability based on alcoholism or drug dependency, the claim is evaluated under § 12.09 of the listings, entitled "Substance Addiction Disorders". 20 C.F.R., Part 404, Subpart P, Appendix 1 (1989). Section 12.09 is structured as a reference listing, *see id.* § 12.00(A), which merely identifies other sections of the regulations that are to be used when evaluating the behavioral, mental, or physical changes resulting from the claimant's regular use of addictive substances. To establish a conclusive presumption of disability, the claimant meets the required level of severity if the requirements of any one of nine categories listed under § 12.09 are met. The plaintiffs contend that the Eighth Circuit has, in *Adams v. Weinberger*, 548 F.2d 239 (1977), articulated an additional standard which is equivalent to nine § 12.09 listings and which must be used to evaluate disabilities based on alcoholism or drug dependence.[3] Under the plaintiffs' interpretation, the *Adams* case mandates that in evaluating such disability claims, "the emphasis should be placed on whether the claimant is addicted to alcohol and as a consequence has lost the voluntary ability to control its use." *Id.* at 244. The plaintiffs further contend that the DDS does not apply the *Adams* standard and thus improperly denies benefits at the first two stages of the administrative process, the Initial and Reconsideration Stages.

---

**3.** The plaintiffs note that nine categories in § 12.09 represent the Secretary's current policy, but claim that the categories conflict with

*Adams.* At the time *Adams* was decided § 12.09 was not in effect.

The plaintiffs seek class certification for all those individuals alleging disability based on alcoholism or other substance abuse who have been denied benefits at the first two stages of the administrative process. The plaintiffs' initial motion for conditional class certification was denied by this court in an order dated February 5, 1990. The plaintiffs now renew the motion, seeking to represent a class of persons defined as follows:

All persons residing in Minnesota:

1. Who have filed or will file an application for Title II and/or Title XVI disability benefits, or who receive or will receive Title II and/or Title XVI disability benefits;

2. Who allege that they are unable to work in whole or in part because of alcoholism or another drug dependency;

3. Who have been or will be denied or terminated by defendants either in an initial or a reconsideration determination;

4. Who have not received a subsequent decision on the application or termination from an administrative law judge; and

5. Whose initial determination was on or after January 25, 1989, or whose reconsideration determination was on or after November 21, 1989.

The plaintiffs note that none of the named plaintiffs had exhausted their administrative remedies at the time this action was filed. The plaintiffs' complaint also confirms that none of the members of the proposed class would ever exhaust their administrative remedies because the class is defined to include only those persons who have had their claims for disability benefits denied or terminated at the first two levels of administrative review. The complaint further specifies that persons who do reach the third step of the appeals process and receive an ALJ decision automatically leave the class, regardless of whether the ALJ's decision was favorable or unfavorable. Therefore, it is undisputed that the named plaintiffs and the proposed class members have failed to exhaust their administrative remedies.

The plaintiffs also concede that exhaustion of administrative remedies would eliminate the errors of which they complain. The plaintiffs only allege that the DDS does not apply the *Adams* standard at the Initial or Reconsideration Stages to evaluate claims based, in whole or in part, on alcoholism or other drug dependency. In other words, if a claimant's impairment does not meet a § 12.09 listing at either the Initial or Reconsideration Stage, that claim is denied or benefits are terminated without any application of the so-called *Adams* standard. The plaintiffs contend, however, that the administrative law judges correctly apply the *Adams* standard at the third stage of the administrative process.[4] The plaintiffs therefore concede that any such errors in the first two stages of the administrative process are subsequently corrected at the later stages of the administrative process.

The history of the named plaintiffs' claims highlight the significance of the plaintiffs' concession that exhaustion of administrative remedies would not be futile. Joseph Drumbeater applied for supplemental security income (SSI) on November 29, 1988. Drumbeater was denied benefits in Initial and Reconsideration determinations dated February 8 and June 23, 1989. On March 12, 1990, Drumbeater had a hearing before an administrative law judge, who granted benefits from December 1, 1986, the date on which Drumbeater claimed his disability had begun.

Daniel J. Schoolcraft filed for Title II disability and SSI benefits on September 9, 1989. After his claim was denied at the initial level, Schoolcraft requested reconsideration on November 13, 1989. On March 22, 1990, the DDS awarded Schoolcraft benefits on both his applications, finding him disabled since September 1, 1989.

Theodore Thomas filed his second application for Title II disability benefits on July 26, 1989, alleging disability due to alcohol-

---

4. Despite their assertion that the ALJs correctly apply the *Adams* standard in the third step of the evaluation process, plaintiffs also note that only 59% of the favorable ALJ decision specifically rely on the *Adams* case.

ism since July 28, 1981. To receive Title II disability benefits a claimant must establish that he was disabled on or before the date of the expiration of his insured status. 42 U.S.C. § 416(i)(3). Thomas alleged disability due to alcoholism since July 28, 1981, and further alleged that his insured status for Title II disability benefits had expired after the onset of his disability on December 31, 1982. Thus, Thomas claimed he was eligible for Title II benefits. After initial and reconsideration denials, Thomas requested an ALJ hearing. On February 9, 1990, the ALJ dismissed the Title II claim because Thomas's previous application for Title II benefits was based on the same time period and had already been denied. The ALJ refused to reopen this earlier decision, thus the question of whether Thomas had been disabled prior to the expiration of his insured status may not be relitigated. The ALJ's decision not to reopen the prior decision is not subject to judicial review. *Califano v. Sanders,* 430 U.S. 99, 102–04, 97 S.Ct. 980, 982–83, 51 L.Ed.2d 192 (1977).

Thomas also filed a claim for SSI benefits. Before he received either an initial or reconsideration decision on this claim, Thomas requested that it be accelerated to the ALJ level so that it could be determined with his Title II claim. The ALJ dismissed his Title II claim, *supra,* but did not dismiss Thomas's SSI claim because the date of the termination of his insured status is irrelevant for a claim of SSI benefits. Because Thomas's Title II claim was dismissed, however, the ALJ denied the acceleration request and remanded the case to the DDS for an initial determination. Thomas's SSI claim remains pending before the DDS.

The plaintiffs contend that this court has jurisdiction to hear their claims under three separate provisions: (1) the provisions for judicial review of final administrative decisions pursuant to the Social Security Act, 42 U.S.C. § 405(g), 1383(c)(3); (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; and (3) mandamus jurisdiction pursuant to 28 U.S.C. § 1361. The defendants

contend that jurisdiction is inappropriate under all three provisions and ask this court to dismiss the case for lack of subject matter jurisdiction or failure to state a claim upon which relief may be granted, or in the alternative, to grant summary judgment.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. With this standard at hand, the court will consider the defendants' motion for summary judgment.

### A. *Jurisdiction Pursuant to 42 U.S.C. § 405(g)*

Jurisdiction for judicial review of final decisions by the Secretary is provided by 42 U.S.C. § 405(g),[5] which states that:

Any individual, after any final decision of the Secretary made after a hearing to which he is a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within 60 days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States

---

**5.** 42 U.S.C. § 1383(c)(3), which deals with claims for supplemental security income, incorporates the standard of judicial review provided in § 405(g).

for the judicial district in which the plaintiff resides....

The Supreme Court has held that the "final decision" requirement of § 405(g) consists of two separate elements: the jurisdictional, nonwaivable requirement that a claim for benefits has actually been presented to the Secretary, and the waivable requirement that the claimant has exhausted all administrative remedies. *Bowen v. City of New York*, 476 U.S. 467, 482–83, 106 S.Ct. 2022, 2031–32, 90 L.Ed.2d 462 (1986) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976)). In the present case, the class of claimants, as defined in plaintiffs' motion for class certification, all meet the first element of § 405(g), the jurisdictional requirement that a claim for benefits has been made. The proposed class, however, consists exclusively of persons who have not met the second requirement, exhaustion of their administrative remedies. The class consists of all persons who have been denied benefits at only the first two levels of administrative review, the Initial and Reconsideration Stages. By definition, these claimants have neither pursued the third stage of appeal, a de novo hearing before an ALJ, nor the fourth stage, an appeal of an adverse ALJ decision to the Appeals Council. The plaintiffs contend that this court should waive the exhaustion requirement so that it will have jurisdiction under § 405(g) to decide the claims of the proposed class.

In evaluating the application of the exhaustion requirement, the Supreme Court has explained that:

the doctrine of administrative exhaustion should be applied with a regard for the particular administrative scheme at issue. Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466–67, 45 L.Ed.2d 522 (1975) (citations omitted). The Court further noted that the exhaustion requirement is "something more than a simple codification of the judicially developed doctrine of exhaustion." *Id.* at 766, 95 S.Ct. at 2467. The language of § 405(g) itself also supports the exhaustion requirement by providing that an individual may obtain judicial review only "after a final decision of the Secretary made after a hearing to which he was party." Interpreting this language, the Court has held that a final decision is a condition of Congress's waiver of sovereign immunity, and thus is "central to the requisite grant of subject-matter jurisdiction." *Salfi*, 422 U.S. at 764, 95 S.Ct. at 2466. The Social Security Act does not define "final decision," leaving it to the Secretary to specify what constitutes the "final decision" which terminates the administrative process and triggers the right to judicial review. *Id.* at 766 & n. 9, 95 S.Ct. at 2467 & n. 9. The Secretary in turn "has provided that a 'final decision' is rendered on a ... claim only after the individual claimant has pressed his claim through all designated levels of administrative review." *Heckler v. Ringer*, 466 U.S. 602, 606, 104 S.Ct. 2013, 2017, 80 L.Ed.2d 622 (1984) (interpreting "final decision" for Medicare claims); *Salfi*, 422 U.S. at 765, 95 S.Ct. at 2466–67 (interpreting finality under § 405(g)). The Supreme Court has also held that in class actions where jurisdiction is based on § 405(g), a class ordinarily may be certified only to the extent that each of its members individually satisfies all jurisdictional requirements, including the final decision requirement. *Salfi*, 422 U.S. at 764, 95 S.Ct. at 2466 (discussing jurisdictional requirements for a class under § 405(g)); *cf. Califano v. Yamasaki*, 442 U.S. 682, 701, 703, 99 S.Ct. 2545, 2557–58, 2558–59, 61 L.Ed.2d 176 (1979) (involving certification of a class action under 42 U.S.C. § 405(g)). Moreover, the Supreme Court has specifically held that where the plaintiffs have fulfilled the nonwaivable requirement of presenting a claim for benefits, but have failed to satisfy the exhaustion requirement, the action should be dis-

missed under § 405(g). *Ringer*, 466 U.S. at 617–19, 104 S.Ct. at 2022–24.

Despite the general requirement of exhaustion, the Supreme Court has recognized that exhaustion may be waived in certain rare circumstances. The plaintiffs rely on *Bowen ·v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), as controlling authority on the question of whether this court should waive the exhaustion requirement.[6] In *City of New York*, the plaintiffs brought a class action seeking relief on behalf of all individuals residing in New York who had, within a specified time period, been denied disability benefits or whose benefits had been terminated pursuant to an allegedly illegal and secret internal policy of the Secretary. *Id.* at 473, 106 S.Ct. at 2026. The Court waived exhaustion on the basis of the "unique circumstances" presented in *City of New York*, specifically "a systemwide, unrevealed policy that was inconsistent in critically important ways with established regulation" and was nevertheless being used to evaluate an entire class of claims. *Id.* at 485, 106 S.Ct. at 2032. The Court waived exhaustion for currently pending claims because "[m]embers of the class could not attack a policy they could not be aware existed", and thus it would be unfair to penalize the claimants for not exhausting their administrative remedies under the circumstances. *Id.* at 482, 106 S.Ct. at 2031 (citation omitted). Moreover, "under these unique circumstances, there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise." *Id.* The Supreme Court specifically distinguished the *City of New York* claimants from those persons "arguing merely that an agency incorrectly applied its regulation." *Id.* The Supreme Court also emphasized that even in situations where the court has found a legally incorrect policy, such a finding still would not necessarily justify a waiver of the exhaustion requirement. The Court expressly stated that it did not "suggest that every internal policy that is . . . inconsistent with legal requirements" and "touches upon the outcome of a class of cases" would justify "excusing exhaustion". *Id.* at 487, 106 S.Ct. at 2033–34. In *City of New York*, the Supreme Court has thus required a very high standard to excuse exhaustion, emphasizing that exhaustion "is the rule in the vast majority of cases." *Id.* at 486, 106 S.Ct. at 2033.

In the present case the policies challenged by the plaintiffs clearly are not secret. The Secretary's standards for evaluating alcoholism and substance addiction claims are published in Social Security Ruling 82–60 and in § 12.09 of the listing of impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (1989). The plaintiffs allege the incorrect handling of disability claims based on alcoholism or drug dependence in the first two stages of the administrative process, but they do not allege a secret policy and thus, a central premise of the *City of New York* holding is absent.[7]

---

**6.** Plaintiffs also cite a number of lower court decisions which have excused the exhaustion requirement. *See, e.g., Wilkerson v. Bowen*, 828 F.2d 117, 121–22 (3rd Cir.1987); *Polaski v. Heckler*, 751 F.2d 943, 951–52 (8th Cir.1984). However, with one exception, none of the cases involve the key admission made by the plaintiffs in the present case that exhaustion of administrative remedies would remove the errors of which plaintiffs complain. The one exception, *Jones v. Califano*, 576 F.2d 12 (2d Cir.1978), is easily distinguished from the present case. First, it predates the now controlling *City of New York* case. Moreover, *Jones* involved one disputed issue of statutory construction and the Secretary's interpretation had already been judged incorrect by both the Appeals Council of the Social Security Administration and a federal court. *Id.* at 17, 20–21. In contrast, the present case does not involve only one issue of statutory

interpretation. Moreover, there has been no ruling on the merits which has been adverse to the Secretary; indeed, the Third Circuit recently upheld § 12.09 in *Petition of Sullivan*, 904 F.2d 826, 845 (3rd Cir.1990).

**7.** *Cf. Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988). In *Pittston*, the Supreme Court refused to excuse the limitations period for seeking review by simply noting that, unlike *Bowen v. City of New York*, "the agency action here was not taken pursuant to a secret internal policy, but under a regulation that was published for all to see." *Id.* at 123, 109 S.Ct. at 425. *See also Petition of Sullivan*, 904 F.2d 826, 833 n. 7 (3rd Cir.1990) (noting that a "secret policy permits tolling of the time in which to seek judicial review of a denial of benefits").

Moreover, the plaintiffs admit that in the present case, unlike *City of New York,* there is no systemwide problem in the appeals procedure, conceding that any alleged errors at the first two levels of the administrative process are corrected by appeal to administrative law judges.

The present plaintiffs also allege no policy which is inconsistent with statute or regulations, but instead claim that the DDS denial of benefits at the first two stages of the administrative process is improper because it conflicts with a 1977 Eighth Circuit case, *Adams v. Weinberger,* 548 F.2d 239 (8th Cir.1977). In discussing the difficulty of analyzing claims of disability based on alcoholism, the *Adams* court noted that when evaluating such a claim, "the emphasis should be placed on whether the claimant is addicted to alcohol and as a consequence has lost the voluntary ability to control its use." *Id.* at 244 (citations omitted). The plaintiffs argue that this language sets up an additional standard which the Secretary must use in step three of the five-step analysis when evaluating disability based on alcoholism or drug dependency, a standard that is equivalent to the other nine § 12.09 listings. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (1989). The plaintiffs contend that the DDS, during the Initial and Reconsideration Stages of the appeals process, does not apply this additional, allegedly mandatory, standard when reaching step three of the disability analysis, and therefore improperly denies or terminates benefits. Under step three of the five-step evaluation process, however, the Secretary does not automatically award disability benefits whenever a claimant evidences a lack of control over drinking or drug use, but rather goes on to consider whether the claimant, under the totality of circumstances, is unable to engage in substantial gainful employment. *See Sulli-*

*van,* 904 F.2d at 845. The plaintiffs essentially argue that *Adams* establishes a per se disability test, that is, the disability inquiry should end at step three of the evaluation process on the mere diagnosis of alcoholism. Thus, persons claiming alcoholism or other substance abuse as a disability would not be required to show that their impairments were severe enough to preclude substantial work. Interpreting *Adams* in this fashion, however, contradicts congressional intent to limit disability benefits under the Social Security Act to only those persons who are unable to perform substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a) & (b), 416.920(a) & (b) (1989).

The plaintiffs' interpretation of *Adams* is also questionable for a number of other reasons. The *Adams* language on which plaintiffs rely was written in response to an ALJ's finding that Adams could "cure" his disability merely by stopping his drinking. The ALJ thus determined that Adams was not disabled, relying on a social security regulation which stated that remediable conditions could not be disabling. The Eighth Circuit noted that courts should focus on whether a claimant possesses the voluntary ability to stop drinking when determining whether his or her alcoholism was a remediable condition. Contrary to plaintiffs' claims, the *Adams* court was not thereby announcing a new standard for evaluating alcoholism as a disability. The *Adams* court never suggested that it was establishing an additional disability standard, but rather indicated that it was merely construing the disability regulations in effect in 1977.[8] 548 F.2d at 242–44. *Adams* thus merely interpreted the then-existing social security regulations, it did not seek to impose an additional standard when a claimant alleged disability because of alcoholism or drug dependency. *Cf.*

---

**8.** The regulations interpreted by the *Adams* court have since been replaced by the nine categories in § 12.09 of the current social security regulations. The plaintiffs in the present case assert that § 12.09 is the Social Security Administration's current policy and that it conflicts with *Adams.* In *Petition of Sullivan,* the Third Circuit examined the current policy under § 12.09 and held that it did not violate prior

court of appeals' decisions. 904 F.2d 826, 844–47 (3rd Cir.1990). Specifically, the Third Circuit found that the current policy does not violate either *McShea v. Schweiker,* 700 F.2d 117 (3rd Cir.1983), or *Purter v. Heckler,* 771 F.2d 682 (3rd Cir.1985), two cases on which the current plaintiffs rely. *Id.* at 844–45. The Third Circuit further held that the § 12.09 listings do not violate the Social Security Act. *Id.* at 847.

*Heckler v. Campbell,* 461 U.S. 458, 466, 103 S.Ct. 1952, 1956–57, 76 L.Ed.2d 66 (1983) (holding that where a social security statute expressly delegates to the Secretary the responsibility for implementing a provision, the court's review is limited to determining whether the resulting regulation exceeded the Secretary's statutory authority and whether the regulation is arbitrary and capricious). Nothing in the *Adams* decision states that the standard set forth in that case must be specifically incorporated by the Secretary at the listing stage, step three of the five-step evaluation procedure. The plaintiffs' contention that the *Adams* standard is the equivalent of a § 12.09 listing is thus unsupported by any language in *Adams.*

The plaintiffs' interpretation of *Adams* also ignores language in *Adams,* as well language in subsequent Eighth Circuit decisions, which provides that in addition to considering the issues of addiction and the voluntary ability to control substance use, the Secretary's evaluation of an alcoholism claim must also include an inquiry into whether the claimant's disability is "the kind of disability with which the [Social Security] Act is intended to deal." *Adams,* 548 F.2d at 245 (citations omitted); *Cruse v. Bowen,* 867 F.2d 1183, 1186 (8th Cir. 1989) (noting that "the mere presence of alcoholism is not necessarily disabling"); *Metcalf v. Heckler,* 800 F.2d 793, 796 (8th Cir.1986) (citing *Adams* for the proposition that "in order to establish a disability predicated on alcoholism, the claimant must show: (1) that he has lost self-control to the point of being 'impotent to seek and use means of rehabilitation,' and (2) that his disability is encompassed by the [Social Security] Act"). Disability under the Act requires both the presence of a medical impairment and the inability by reason of that impairment to perform any substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To the extent that plaintiffs

interpret *Adams* to mandate a finding of disability without further consideration of the effects of alcoholism on a claimant's ability to work, their interpretation is contrary to the plain language of the social security statute.[9] *Adams* also does not support such an interpretation; on the contrary, it acknowledges that a claimant's alcoholism must be "the kind of disability with which the Act is intended to deal." *Adams,* 548 F.2d at 245. The plaintiffs' interpretation of *Adams* thus seeks to establish a standard that is unsupported by *Adams* and by subsequent Eighth Circuit case law.

The plaintiffs in the present case, unlike those in *City of New York,* allege no secret agency policy, relying instead on a questionable interpretation of the *Adams* case. In addition to the presence of a secret policy, the Supreme Court in *City of New York,* also considered three other factors when determining whether exhaustion should be waived: (1) whether the claim for which exhaustion is sought is entirely collateral to the claim for benefits; (2) whether class members would be irreparably injured if required to exhaust their administrative remedies; and (3) whether completing the administrative appeals process would serve the purposes underlying the exhaustion requirement, specifically that "because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context". 476 U.S. at 483–85, 106 S.Ct. at 2031–33. These additional factors will be examined to determine if exhaustion should be waived in the present case.

In *City of New York,* the Court considered whether the claim raised by the plaintiffs was entirely collateral to their claim for benefits, reasoning that waiver of

---

**9.** In *Petition of Sullivan,* the Third Circuit specifically rejected an argument identical to the plaintiffs', emphasizing that:

> Not all persons whose abuse of alcohol has progressed to the point that they are unable to control their drinking are incapable of any gainful employment. Common medical

understanding does not square with an assumption that every person who meets the clinical definition of alcoholism, and is thus unable to control his drinking, is *ipso facto* unable to perform *any* gainful activity.

904 F.2d 826, 845 (3rd Cir.1990) (emphasis in original).

exhaustion would be indicated in cases where the claims raised were entirely collateral to the plaintiffs' claims for benefits. *Id.* at 483, 106 S.Ct. at 2031–32 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 990, 47 L.Ed.2d 18 (1976)). In *City of New York*, the plaintiffs sought to vindicate a separate procedural right, the right to have their claims decided according to the Secretary's published criteria, rather than the secret policy which they alleged was being used. *Id.* at 482–83, 106 S.Ct. at 2031–32. Similarly, in *Mathews v. Eldridge*, the claimant challenged a procedural rule which provided a hearing only after a person's benefits had been terminated. 424 U.S. at 324–26, 96 S.Ct. at 897–99. Eldridge, however, did not challenge the merits of the termination of his benefits, only the adequacy of the termination process used. The Supreme Court waived exhaustion because Eldridge's challenge to the hearing procedure was entirely collateral to his claim for benefits. *Id.* at 330–31, 96 S.Ct. at 900–01.

In the present case, however, this factor does not justify the waiver of exhaustion because the present plaintiffs' claims are not collateral to their claims for benefits. The plaintiffs contend that persons who lack the ability to voluntarily control their drinking are, on the basis of *Adams*, entitled to a presumption of disability in step three of the evaluation process without reference to the listings under § 12.09. The plaintiffs thus are not merely asking for a pretermination hearing (as in *Eldridge*) or challenging the failure to adhere to published regulations (as in *City of New York*), they instead challenge the Secretary's substantive standards governing the entitlement to benefits. The Supreme Court has already held in *Heckler v. Ringer* that such claims are not collateral, but rather are inextricably intertwined with a respondent's claim for benefits. 466 U.S. 602, 614, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984); *Smith v. Schweiker*, 709 F.2d 777 (2d Cir.1983). In *Smith v. Schweiker*, the Second Circuit explained in similar circumstances that:

The claims raised in this action are hardly collateral to the demand for benefits.

Unlike Eldridge, who was asserting a right to a particular kind of procedure to which he was not entitled under the Secretary's regulations, the plaintiffs here claim only that, depending on the evidence adduced, an illegal termination of their benefits may result from the application of the Secretary's test for current disability.

*Id.* at 780. The present case also fails to raise claims that are entirely collateral to the claims for benefits, and thus under *City of New York*, the absence of this factor argues against waiver of the exhaustion requirement.

The plaintiffs in the present case also fail to demonstrate irreparable harm, another factor considered by the Court when waiving exhaustion in *City of New York*, 476 U.S. at 483–84, 106 S.Ct. at 2031–32. In excusing exhaustion the Court heavily relied upon the district court's finding that the *City of New York* class members would suffer irreparable harm, not merely because their benefits would be denied, but because the class of plaintiffs as defined had severe mental disturbances, and requiring them to exhaust their administrative remedies could trigger severe medical setbacks. *Id.* The Court further noted that many of the *City of New York* plaintiffs did have to be hospitalized because of the trauma resulting from the wrongful termination of their disability benefits. *Id.* at 484, 106 S.Ct. at 2032. In contrast, the plaintiffs in the present case do not allege that benefits would be denied throughout the administrative process, admitting that any alleged errors in the process are corrected at the ALJ stage. The plaintiffs also do not demonstrate that exhausting the administrative process would itself cause irreparable harm to any class members. Unlike the class members in *City of New York*, the members of the proposed class in the present case are no different than any other claimant who has been denied benefits at the initial stages of the administrative process. Moreover, in establishing a multi-tiered review process, Congress impliedly determined that a retroactive award of benefits at a later adminis-

trative stage is a fully adequate remedy to any injury stemming from an incorrect denial of benefits at an earlier administrative stage. *See, e.g., Ringer,* 466 U.S. at 627, 104 S.Ct. at 2028 (reasoning that "Congress must have felt that cases of individual hardship resulting from delays in the administrative process had to be balanced against the potential for overly casual or premature judicial intervention in an administrative system that processes literally millions of claims every year"). The plaintiffs also fail to demonstrate that any delay resulting from the exhaustion requirement has actually harmed any of the named plaintiffs. Indeed, the plaintiffs' delay in filing this lawsuit belies any claims of irreparable harm stemming from the delay imposed by the administrative process. Thus, the absence of any irreparable injury also undercuts the plaintiffs' request that exhaustion be waived.

The final factor examined by the Court in *City of New York* was whether completing the administrative process would serve the purposes underlying the exhaustion requirement. 476 U.S. at 484–85, 106 S.Ct. at 2032–33. As the Supreme Court empha-

sized in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the exhaustion requirement is intended to prevent "premature interference with agency processes" so that:

> the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Id.* at 765, 95 S.Ct. at 2466–67 (citations omitted). All of the justifications for requiring exhaustion are present in this case. In sharp contrast to *City of New York,* the plaintiffs in the present case openly concede that exhaustion will remove the alleged errors in the administrative process. Moreover, the complexity of alcoholism and drug addiction also supports the exhaustion requirement by allowing the administrative process to proceed on a case-by-case basis to determine whether a particular claimant has the ability to control his or her drinking or drug abuse, and if not, whether the person can nevertheless perform any substantial gainful activity.[10] *See Sullivan,*

---

**10.** The Supreme Court has acknowledged the complexity of alcoholism. In *Traynor v. Turnage,* 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), the Supreme Court sustained the validity of a Veterans Administration regulation which classified all forms of alcoholism as "willful misconduct", except for alcoholism that was "secondary to and a manifestation of an acquired psychiatric disorder." *Id.* at 538 n. 2, 550–52, 108 S.Ct. at 1376 n. 2, 1382–84. The Court noted that whether alcoholism "is a disease whose course its victims cannot control" is a "medical issue on which the authorities remain sharply divided." *Id.* at 552, 108 S.Ct. at 1383. *See generally,* Fingarett, *The Perils of Powell: In Search of a Factual Foundation for the "Disease Concept of Alcoholism,"* 83 Harv.L. Rev. 793, 802–08 (1970) (discussing the controversy regarding the nature of alcoholism).

A survey of current literature also demonstrates the controversy regarding the nature of alcoholism and other forms of substance addiction. *See, e.g.,* N. Heather & I. Robertson, *Problem Drinking* (2d ed. 1989) (discussing the various theories regarding alcoholism, and arguing that problem drinking is not a disease but rather a social psychological response to various environmental stimuli); J. Beasley, *Wrong Diagnosis, Wrong Treatment: The Plight of the Alcoholic in America* (1987) (arguing that alcoholism results from an inherited biochemical differ-

ence which should be treated by stabilizing an individual's nervous system through nutrition and exercise); *Constructive Drinking* (M. Douglas ed. 1987) (examining alcohol use from an anthropological perspective); *Psychological Theories of Drinking and Alcoholism* (H. Blane & K. Leonard ed. 1987) (detailing nine theories of alcoholism, including such theories as the social learning theory, the tension reduction theory, and the interactional theory).

Minnesota is a leader in chemical dependency treatment. As of 1989, Minnesota treatment programs were admitting 40,000 people per year. The Minnesota Consolidated Chemical Dependency Treatment Fund pays for treatment of 16,000 of these people, and is being viewed as a national model for publicly funded chemical dependency treatment. Chemical Dependency Program Division, Department of Human Services of the State of Minnesota, *Biennial Report* 46 (1989). Minnesota has also been a leader in curbing the spread of AIDS among intravenous drug abusers. *Id.* Minnesota state agencies currently spend a total of 63.5 million dollars a year on alcohol and drug related programs. *Id.*

In 1989, Minnesota conducted and funded a household survey of drug and alcohol use among adults (age 18 and over) living in Minnesota. The survey was designed to provide current information regarding the extent of sub-

904 F.2d at 845. Exhaustion also permits the agency to compile a complete record and provides the agency with a full opportunity to exercise its judgment and expertise to evaluate such claims and correct any errors in the administrative process.[11] Therefore, the purposes underlying the exhaustion requirement will not be served if exhaustion is waived in the present case.

Based on the foregoing analysis, it is obvious that none of the unique circumstances which warranted the waiver of exhaustion in *City of New York* is present in this case. The plaintiffs do not challenge any secret policies which are inconsistent with published regulations. They also fail to prove that they would suffer irreparable harm if required to exhaust their administrative remedies. They raise claims which are not entirely collateral, but are inextricably intertwined with their claims for benefits. Finally, the policies which support the exhaustion requirement would be served if the plaintiffs were required to proceed to the third and fourth levels of the administrative process. The plaintiffs essentially claim that exhaustion of administrative remedies should be waived because if exhaustion were required, persons with possibly meritorious claims would be forced to pursue their administrative appeals, would obtain benefits, and would have no basis for complaint. This claim is insufficient to support the requested waiver and thus the court determines that the plaintiffs must exhaust their administrative remedies. As a result, there is no basis for jurisdiction pursuant to § 405(g).

B. *Plaintiffs' Assertion That This Court Has Jurisdiction Pursuant to 28 U.S.C. § 1361*

■ Under 28 U.S.C. § 1361:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

The plaintiffs claim that this section provides an alternative basis for jurisdiction over their claims. The Supreme Court, however, specifically rejected this argument in *Heckler v. Ringer*, 466 U.S. 602, 616–17, 104 S.Ct. 2013, 2022–23, 80 L.Ed.2d 622 (1984). In rejecting this alternative basis for jurisdiction, the Court noted that "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Id.* at 616, 104 S.Ct. at 2022. (citations omitted). The Court then held that § 205(g) of the Social Security Act clearly provides claimants with an adequate remedy for challenging all aspects of the Secretary's denial of their claims, and thus, mandamus was not available as an alternative basis for jurisdiction. *Id.* at 617, 104 S.Ct. at 2022–23. Following *Ringer*, this court has no jurisdiction over plaintiffs' claims under § 1361.

C. *Plaintiffs' Claim That Federal Question Jurisdiction Provides an Alternative Basis for Jurisdiction*

■ The plaintiffs also claim that this court has jurisdiction over their constitutional claims against Secretary Sullivan under 28 U.S.C. § 1331, which states that:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

The plaintiffs further assert that this court has jurisdiction over their claims against

---

stance use in Minnesota, how that use compares with national figures, and how use varies by region, sex, and race. Chemical Dependency Program Division, Minnesota Department of Human Services, *Minnesota Household Survey of Drug and Alcohol Use Among Adults,* Report No. 1 (1989).

**11.** Ironically, the plaintiffs claim that waiver of exhaustion is required in the present case be-

cause "they seek declaratory and injunctive relief requiring the defendants to develop the evidence of their impairments fully and adequately...." Instead of supporting the requested waiver, this assertion provides further evidence that plaintiffs should be required to exhaust their administrative remedies to permit the agency to compile a complete record.

the state officials, pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Under § 1343:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced against any person:

....

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States ...

The plaintiffs' attempt to maintain their suit on the basis of federal question jurisdiction, however, is barred by the provisions of the Social Security Act itself. As the Supreme Court noted in *Weinberger v. Salfi*, 42 U.S.C. § 405(h) expressly provides that:

No action against the United States, the Secretary, or any officer or employee thereof shall be brought under [28 U.S.C. § 1331 *et seq.*] to recover on any claim arising under [Title II of the Social Security Act].

*Weinberger v. Salfi*, 422 U.S. at 756, 95 S.Ct. at 2462 (citing statute) (brackets in the original). The language of § 405(h) indicates that this jurisdictional bar is more than a codified requirement of administrative exhaustion, because it "states that no action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted." *Id.* at 757, 95 S.Ct. at 2463. The wording of § 405(h), thus "bars district court federal-question jurisdiction over suits, such as this one, which seek to recover Social Security benefits." *Id.* at 756–57, 95 S.Ct. at 2462–63. Following this analysis, this court has no federal question jurisdiction over the plaintiffs' claims.

## CONCLUSION

Based on the foregoing analysis, this court has no federal question jurisdiction over the plaintiffs' claims. *Salfi*, 422 U.S.

at 756–57, 95 S.Ct. at 2462–63. The court also has no jurisdiction pursuant to 28 U.S.C. § 1361 because no writ of mandamus could properly issue in this case. *Ringer*, 466 U.S. at 616, 104 S.Ct. at 2022. The court also determines that waiver of exhaustion is not appropriate, thus this court has no jurisdiction pursuant to 42 U.S.C. § 405(g). The court therefore grants the defendants' motion for summary judgment.

Based on the foregoing analysis, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for class certification is denied as moot;

2. Defendants' motion for summary judgment is granted;

3. Defendants' motion to dismiss plaintiffs' claim for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted is denied as moot;

4. Defendants' appeal from the magistrate's order granting plaintiffs' motion to compel responses to certain deposition questions is denied as moot; and

5. Defendants Roers' and Samargia's appeal of the magistrate's order requiring R. Dougherty to answer certain deposition questions is denied as moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.